**PAYNE 22, INC., on behalf of itself and all others similarly situated, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. DC–102.

Temporary Emergency Court of Appeals.

Argued Jan. 30, 1985.

Decided March 29, 1985.

Rehearing Denied May 10, 1985.

Patricia F. Bak, Kohn, Milstein, Cohen & Hausfeld, Washington, D.C., with whom Jerry S. Cohen and Michael D. Hausfeld, of the same firm, were on the brief for plaintiff-appellant.

June Wagoner Edwards and Stephen E. Hart, Dept. of Justice, Washington, D.C.,

with whom Richard K. Willard, Acting Asst. Atty. Gen., and Marcia Sowles, Dennis M. Moore, Emily Sommers, Dept. of Energy, Washington, D.C., of counsel, were on the brief for defendant-appellee.

Before GIGNOUX, BONSAL and LACEY, JJ.

PER CURIAM:

Payne 22, Inc. ("Payne") appeals from an order of the United States District Court for the District of Columbia (Jackson, J.) entered July 18, 1984 dismissing, on the ground of lack of standing, Payne's amended complaint in a class action against the United States. We affirm.

Payne is a gasoline retailer in Cleveland, Ohio which purchased gasoline from Sun Oil Company ("Sun"). Payne alleges that during the period from March 6, 1973 through June 30, 1980 it was overcharged by Sun in violation of the Mandatory Petroleum Price Regulations ("Regulations"), 10 C.F.R. Pt. 212 (1979).

In late 1979, in the course of an investigation of Sun, the Department of Energy ("DOE") issued several Notices of Probable Violation ("NOPV") with respect to possible overcharges by Sun. There followed negotiations between Sun and DOE, culminating in a proposed Consent Order settling DOE's pending and potential claims against Sun for possible violations of the Regulations. The proposed Consent Order stated that it was to settle and resolve all civil claims against Sun by DOE with respect to Sun's compliance with the Regulations for the period March 6, 1973 through June 30, 1980. The proposed Consent Order recited that "[i]n 1973, DOE began a thorough and detailed audit to determine Sun's compliance with all regulatory requirements ..."; that "Sun has cooperated fully with the auditors"; and that "DOE has found no evidence that Sun has committed any willful or intentional violations of the federal petroleum price and allocation regulations for the period covered by this Consent Order." Consent Order ¶¶ 402, 403.

Under the terms of the proposed Consent Order, Sun agreed:

(1) to remit $25,000,000 to the United States Treasury to be deposited in the general fund;

(2) to remit $4,756,086, plus interest, to the Treasury in settlement of *Sun Oil Company of Pennsylvania v. United States*, (No. 79–1466 (D.C.Cir.));

(3) to make refunds of $442,995 to certain purchasers of crude oil; and

(4) to subtract $80,000,000 from its bank of unrecovered increased motor gasoline costs effective June 30, 1980. *Id.*, ¶¶ 502–05.

Pursuant to 10 C.F.R. § 205.199J, DOE published in the Federal Register on October 8, 1980 a notice of the proposed Consent Order, and invited comments, 45 Fed. Reg. 66842 (1980). Payne did not comment. DOE responded to the comments it received in its notice of adoption of the proposed Consent Order, 45 Fed.Reg. 80347–48 (1980), noting that some commentators had stated that the payment of $25,000,000 to the Treasury was in excess of DOE's authority because the funds would not be available for restitution to injured purchasers from Sun. Also, in response to the comments, DOE stated that "in light of the size of the refund vis-a-vis the number of purchasers and the volume of products sold, an apportionment would lead to refund amounts so small as to be meaningless to the individual consumer" and that since the "payment to the U.S. Treasury works to the benefit of *all* consumers and purchasers" (emphasis in original), this remedy was appropriate in the circumstances. 45 Fed.Reg. 80348 (1980). Following the expiration of the 30-day comment period (November 7, 1980), DOE made the Consent Order final on December 4, 1980.

Fifteen months after the Consent Order became final, Payne and the class it claims to represent instituted this action in the United States Court of Claims, alleging that Payne and the class were victims of overcharges by Sun and that DOE had a duty to attempt to identify those overcharged and to recompense them out of the

$25,000,000 fund before the balance could be remitted to the general fund of the U.S. Treasury.[1] Payne asserts that the sole purpose of its action was to obtain the return of the $25,000,000 from the United States Treasury to DOE so that it may become a fund out of which claims alleging overcharges by Sun may be paid.

■ Under Section 210 of the Economic Stabilization Act of 1970 ("ESA"), as amended, 12 U.S.C. § 1904 note (1980), Payne and the class it represents are entitled to bring a private action against Sun to recover the amount of any overcharges they may have suffered. This private remedy is separate and apart from the agency enforcement proceeding brought by DOE against Sun which resulted in the Consent Order.

This court has previously warned against "[t]he commingling of private and agency enforcement devices for which Congress has made separate provision...." *Dyke v. Gulf Oil Corp.*, 601 F.2d 557, 567 (Temp. Emer.Ct.App.1979), *cert. den.*, —— U.S. ——, 105 S.Ct. 173, 83 L.Ed.2d 108 (1984). Since Payne and the class it represents are afforded a statutory remedy by Section 210 to recover overcharges, they may not intervene or participate in DOE's enforcement proceeding. We so held in *Cities Service Co. v. Department of Energy*, 715 F.2d 572 (Temp.Emer.Ct.App.1983), and we find that decision is controlling here.

In *Cities Service* we pointed out that in view of its statutory remedy, the district court correctly concluded that Cities Service "has no interest that would be impaired by" the Agreed Final Judgment between DOE and Pennzoil. *Id.* at 574. Similarly, Payne's rights here are not impaired by the Consent Order; therefore Payne lacks standing to intervene or participate in DOE's enforcement proceeding against Sun.

In entering into the Consent Order, DOE was exercising its enforcement authority to protect the public. Section 210 provided Payne with a private remedy against Sun to recover for any overcharges which it suffered. This fundamental difference between the public and private remedies was discussed in *Bulzan v. Atlantic Richfield Co.:*

> [T]he administrative remedies authorized by the ESA are not designed to provide a redress for a victim who has suffered an injury because of a violation of a FEA or DOE regulation; in other words, in contrast to private remedies, administrative remedies are not concerned either with *punishing* a violator for his illegal conduct or with *compensating* a victim for his injuries. Rather, the purpose of administrative remedies "... is to insure, on a national scale, the *enforcement* of [the DOE's administrative] regulations." Economic Regulatory Enforcement Manual, § 1.501.00 (emphasis in original).

620 F.2d 278, 282 (Temp.Emer.Ct.App. 1980).

In *Jaymark Corp. v. Phillips Petroleum Co.*, C.A. No. 83–592, Slip Op. at 10 (D.D.C. Dec. 21, 1983), the district court pointed out that the "plaintiffs lack standing as alleged third-party beneficiaries to enforce DOE's consent decrees to their benefit because of the well established prohibition against permitting enforcement of consent decrees by non-parties." Payne argues that *Jaymark* and other cases supporting this proposition are "inapposite" here since Payne is not challenging the terms of the Consent Order but, rather, challenging the authority of DOE to enter into the Consent Order because it exceeded its authority by failing to make any attempt to identify victims of Sun's overcharges pursuant to its mandatory Subpart V procedures. 10 C.F.R. §§ 205.280–.288. We disagree.

■ We share the concern expressed by District Judge Hart in *Consumer Energy Council v. Duncan*, 4 Energy Mgmt. (CCH) ¶ 26,314 at 28,418 (D.D.C.1981) that if DOE consent orders were to be invalida-

---

**1.** The action was subsequently transferred, on consent, to the United States District Court for the District of Columbia.

ted by actions brought by third parties it "would simply create chaos ... [t]he plaintiffs would gain nothing—the public would gain nothing and everyone would lose." Where a refiner overcharges its distributors it is not unlikely that the distributors will pass on the overcharges so that, in the end, the public is the loser. This supports the provision of the Consent Order that the $25,000,000 be paid into the United States Treasury where it will benefit the public.

Payne cites *Citronelle-Mobile Gathering, Inc. v. Edwards,* 669 F.2d 717 (Temp. Emer.Ct.App.) *cert. denied,* 459 U.S. 877, 103 S.Ct. 172, 74 L.Ed.2d 141 (1982) to support its contentions. There, however,

the district court concluded that Citronelle had violated the Regulations and determined who had been overcharged. Here, on the contrary, in the Consent Order the DOE alleges no violations by Sun and Sun denies any violations of the Regulations.

For the foregoing reasons, the judgment of the district court is AFFIRMED.