**FLORIDA ROCK INDUSTRIES, INC. Plaintiff,**

v.

**John S. HERRINGTON, et al., Defendants.**

Civ. A. No. 88–0436.

United States District Court, District of Columbia.

Dec. 8, 1988.

Raymond Banoun, David J. Bardin, and Barbara S. Wahl of Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for plaintiff.

Henry A. Gill, Jr., Marc Johnston, and Stephen C. Skubel of the Dept. of Energy, Office of the General Counsel, Washington, D.C., for defendants.

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

Plaintiff, Florida Rock Industries, Inc. filed this suit because it claims that the Office of Hearing and Appeals ("OHA") of the Department of Energy ("DOE") acted arbitrarily and capriciously and abused its discretion when it held that Florida Rock and Tank Lines ("Tank Lines"), a former subsidiary of plaintiff, waived plaintiff's right to recover restitutionary relief for crude oil overcharges it paid.[1] Plaintiff is asking the Court to set aside the OHA's decision and order denying it recovery and to direct the OHA to consider plaintiff's application for restitutionary relief on the merits.

There are no factual disputes in this case. The only bone of contention is whether Tank Lines effectively waived plaintiff's rights to restitution. As such, the parties filed cross-motions for summary judgment. Upon careful consideration of both parties' motions and the supporting and opposing legal memoranda, oral argument by counsel on these motions, and the underlying law, the Court will grant plaintiff's motion for summary judgment and will deny defendant's motion for summary judgment.

## BACKGROUND

The facts giving rise to plaintiff's claim are as follows: The Department of Energy administered price controls on crude oil produced in the United States from August 19, 1973 through January 27, 1981. *Joint Stipulation of Material Facts* ("Joint Stip-

---

**1.** The standard the Court is to apply when reviewing an agency decision is set forth at 5 U.S.C. § 706. That provision requires a reviewing court to set aside an agency decision when it finds that it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

ulation") at ¶ 4. During that time period, some producers overcharged for crude oil they produced. In response to these overcharges, restitutionary programs were established. Congress ratified the creation of restitutionary programs by its enactment of the Petroleum Overcharge Act of 1986 ("Act"), 15 U.S.C. §§ 4501–4507. The Act sets out as one of its purposes providing injured parties with restitution "to the maximum extent possible." [2]

There are two kinds of restitutionary programs that are at issue in this case. The first is commonly known as "Subpart V" programs. Subpart V programs were established by regulations which were promulgated in 1979 and are codified at 10 C.F.R. Part 205, Subpart V. Under these Subpart V programs, the OHA administers escrow funds collected from crude oil producers as the result of litigation or settlements of pending litigation.

The other type of restitutionary program at issue is referred to as the "Surface Transporters Stripper Well Escrow Fund ("ST Program")." The ST program was established pursuant to a settlement agreement in *The Department of Energy Stripper Well Litigation*, 653 F.Supp. 108 (D.Kan.1986). The ST program is governed by the terms of that settlement agreement. Unlike the Subpart V programs, the ST program is only available to certain end users. To be considered for the ST program, an applicant must have consumed petroleum products in surface transportation activities. *Joint Stipulation* at ¶ 6.

Tank Lines was a surface transporter so was eligible to apply for restitution under either the Subpart V or ST programs. As part of the application process for the ST program, an applicant must sign a standard Settlement Claim Form and Waiver ("Waiver Form"). From reading the Waiver Form, plaintiff could not discern whether it would be precluded from Subpart V relief if Tank Lines, its former subsidiary, applied for relief pursuant to the ST program. *Complaint* at ¶ 15. Because there was no written guidance from OHA on this question and the deadline for ST program applications was near, plaintiff's representatives contacted the OHA's staff attorney. *Complaint* at ¶ 18. The OHA's staff attorney advised plaintiff that OHA was uncertain as to what its interpretation of the Waiver Form would be and that applicants would be advised to file their applications in the alternative. *Complaint* at ¶ 18.[3]

On December 5, 1986, Tank Lines filed with the OHA the Waiver Form that was a prerequisite to its being considered for restitutionary relief under the ST program. Stapled to Tank Line's Waiver Form was a letter stating "[w]e have concluded that Tank Lines is eligible for Surface Transportation refunds even though its former parent (which made extensive non-transportation use of petroleum) will file under Subpart V. If OHA disagrees, we respectfully request that this application be withdrawn and deemed, instead, an additional Subpart V application." *Joint Stipulation*, Exhibit 2.

By letter dated December 9, 1986, plaintiff applied to the OHA for restitution pursuant to the Subpart V program. *Joint Stipulation* at ¶ 12. On October 20, 1987, the OHA issued a decision and order approving Tank Lines' ST escrow application and denying plaintiff's application to the

---

**2.** (1) The Secretary shall, through the Office of Hearings and Appeals of the Department of Energy, conduct proceedings expeditiously in accordance with subpart V regulations for the purpose of, to the maximum extent possible—

    (A) identifying persons or classes of persons injured by an actual or alleged violation of the petroleum pricing and allocation regulations issued pursuant to the Emergency Petroleum Act of 1973 or the Economic Stabilization Act of 1970;

    (B) establishing the amount of injury incurred by such persons; and

    (C) making restitution, through the disbursement of amounts in the escrow accounts described in subsections (b) and (d) of section 3002, to such persons.

15 U.S.C. § 4502(b).

**3.** The Joint Stipulation submitted by the parties does not mention whether counsel for plaintiff contacted the staff attorney at the OHA. Counsel for defendant, however, conceded that this occurred at a hearing the Court held on the parties' cross-motions for summary judgment on December 5, 1988.

Subpart V program. On January 14, 1988, the OHA denied plaintiff's and Tank Lines' Motion for Reconsideration. Defendants do not dispute that plaintiff and Tank Lines conducted two separate businesses and that there was no double counting of gallons of petroleum in their applications. *Joint Stipulation* at ¶ 18. The sole reason that defendants gave for denying plaintiff's application for restitution under the Subpart V program was that Tank Lines waived plaintiff's claim to relief by executing the Waiver Form.

Plaintiff is seeking relief based on two alternative theories of recovery. The first is that defendants have acted "unlawfully, arbitrarily and capriciously" in construing the Waiver Form's language as precluding plaintiff from applying for relief under the Subpart V program. The other theory is that defendants acted "unlawfully, arbitrarily, and capriciously" by concluding that Tank Lines' submission of the Waiver Form was an irrevocable waiver of plaintiff's right to apply for restitution under the Subpart V program because of Tank Lines' attachment of a letter to the Waiver Form qualifying its application. The Court will base its ruling only on plaintiff's latter theory of recovery.[4]

4. This controversy revolves around the interpretation of two provisions of the Waiver Form that Tank Lines signed.

The first provision is paragraph 7(a) which provides that:

> Grantor [Tank Lines] hereby releases and waives all Grantor's existing and future claims whether ascertainable at law or in equity, and whether known or unknown that fall within any one or more of the following classes....

Paragraph 9 of the Waiver form provides that "[t]his Waiver and Release shall be binding upon the Grantor, its parents, subsidiaries, affiliates, successors, and assigns."

Plaintiff argues that the subject matter of the Waiver Form is confined to Tank Lines' claims because there is no language in the form extending its scope beyond those claims belonging to the Grantor which is Tank Lines in this case. *Plaintiff's Motion for Summary Judgment* at 15. The Court does not question the reasonableness of plaintiff's construction, but will not grant plaintiff recovery on this ground because to do so would probably be contrary to the purpose and intent underlying the ST program. Defendants assert that a "primary purpose" of the ST

## DEFENDANTS ARE EXALTING FORM OVER SUBSTANCE

The most telling paragraph of the Joint Stipulation is paragraph 20. This paragraph provides that "[t]he OHA has dismissed ST applications in which Claim Forms themselves included any alterations or qualifications of the Waiver and Release provision or the Binding Agreement set forth in the ST claim Form." *Joint Stipulation* at ¶ 20. In other words, there would have been no waiver and both plaintiff and Tank Lines would have been eligible to apply for restitution for petroleum overcharges under the Subpart V program had Tank Lines qualified its application to the ST program on the actual Waiver Form rather than a letter stapled to it. If ever there was a clear case of exalting form over substance, this is surely it.

Besides exalting form over substance, defendants' argument is inconsistent with the recognized law concerning the execution of releases. "In construing the scope of [a] release, [it is necessary to] give effect to the intent of the parties, as demonstrated by the language of the release itself *and* the circumstances surrounding its execution." *Northern Oil, Co. v. Standard Oil Co. of California,* 761 F.2d 699 (Temp.Em.Ct.App.), *cert. denied,* 474 U.S.

agreement "was to effect a global settlement of a variety of claims relating to crude oil overcharges." *Defendants' Motion for Summary Judgment* at 12.

No court decision has closely analyzed the language of the Waiver Form to determine whether the waiver is confined only to those claims that the grantor can make on its own behalf or whether it extends to claims of a parent or affiliate that the Grantor could not make in its own right. It is possible that the United States Temporary Emergency Court of Appeals will consider this question in an appeal of Judge Theis' decision in *Mid–America Dairymen, Inc. v. Herrington,* No. 88–2041 (D.Kan. June 28, 1988) filed on June 29, 1988; Judge Theis did not consider this precise question. The DOE has, however, examined in some detail the language of the form at issue in *Union Pacific Railroad Co.,* ¶ 85,048 (May 20, 1987). The DOE held that the provision at issue is "an election of remedies clause" whereby an applicant must choose between the ST or Subpart V programs and that the election is binding on all the applicant's "parents, subsidiaries, affiliates, successors, and assigns."

821, 106 S.Ct. 73, 88 L.Ed.2d 59 (1985) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 342–48, 91 S.Ct. 795, 808–11, 28 L.Ed.2d 77 (1971)) (emphasis added). Defendants' arguments in support of an effective waiver fail because they do not take into account the circumstances surrounding Tank Lines' execution of the Waiver Form; these circumstances include the letter stapled to the Waiver Form, the uncertainty within the OHA concerning the precise legal of effect of the language of the Waiver Form, and the approaching deadline for the filing of ST program applications. Accordingly, the Court finds that Tank Lines' did not waive plaintiff's right to recovery under the Subpart V program.

## CONCLUSION

Plaintiff and Tank Lines had reason to question the legal effect of the Waiver Form and, therefore, prudently contacted a staff attorney at the OHA. The staff attorney expressed doubt as to the proper construction of the Waiver Form's language and advised Tank Lines to file its application in the alternative. In accordance with this advice, Tank Lines attached a letter to its Waiver Form clearly stating that it only wanted to be considered for the ST program if such consideration would not preclude plaintiff from being considered for the Subpart V program. To adopt defendants' conclusion that the letter stapled to the form did not qualify Tank Lines' waiver and that its waiver could only be qualified if Tank Lines' wrote on the actual form itself exalts form over substance.

Because the OHA decided that Tank Lines' participation in the ST program would preclude plaintiff from participating in the Subpart V program, it should have withdrawn Tank Lines' application from consideration for the ST program. Defend-

ants' failure to withdraw the application was arbitrary and capricious and an abuse of discretion. Accordingly, the Court finds that Tank Lines' did not waive plaintiff's right to apply for relief under the Subpart V program and that plaintiff is entitled to summary judgment as a matter of law. As such, the OHA must now consider plaintiff's application to the Subpart V program on the merits.[5]

The Court will issue an Order of even date herewith memorializing these findings.

## ORDER

In accordance with the Court's Opinion of even date herewith, it is, by the Court, this 8th day of December, 1988,

ORDERED that the plaintiff's motion for summary judgment shall be, and hereby is, granted; and it is

FURTHER ORDERED that the defendants' motion for summary judgment shall be, and hereby is, denied; and it is

FURTHER ORDERED that defendants' decisions and orders holding that Tank Lines waived plaintiff's right to apply for restitution under the Subpart V program shall be, and hereby are, set aside on the ground that they are arbitrary and capricious and an abuse of discretion; and it is

FURTHER ORDERED that defendants shall process plaintiff's application for restitution under the Subpart V program on the merits forthwith; and it is

FURTHER ORDERED that this case stands dismissed from the dockets of this Court.

---

5. The Court notes that plaintiff's Complaint mentions as a possible course of action Tank Lines' agreeing to decline accepting relief from the ST escrow fund by returning the check it received under that program and instead pursuing relief under Subpart V. *Complaint* at ¶ 47(C). At the hearing the Court held on De-

cember 5, 1988, counsel for plaintiff advised the Court that Tank Lines has not yet deposited the checks it has received from the ST Program. Any agreement that the parties make concerning the return of the checks by Tank Lines will, however, have to be with Tank Lines' consent because Tank Lines is not a party to this suit.