CONSOLIDATED EDISON CO. et
al., Plaintiffs,

v.

John S. HERRINGTON, Secretary of
Energy et al., Defendants.

Civ. Nos. 87–2717 (HHG), 88–0911
(HHG) and 88–1339 (HHG).

United States District Court,
District of Columbia.

May 14, 1990.

Philip P. Kalodner, Washington, D.C., and Philadelphia, Pa., for plaintiffs.

Stephen C. Skubel, Office of the General Counsel, U.S. Dept. of Energy, Washington, D.C., for defendants.

Bernard Nash, Edward G. Modell, Eileen P. Shannon, Nash, Railsback & Plesser, Washington, D.C., for Hawaii, Illinois, Kansas, Nebraska, Nevada. North Carolina, Guam, and the Virgin Islands.

Andrew P. Miller, Milton B. Whitfield, J. Bradley Ortins, Dickstein, Shapiro & Morin, Washington, D.C., for Delaware, Iowa, Louisiana, North Dakota, Rhode Island, and West Virginia.

James F. Flug, Paula Dinerstein, Lobel, Novins, Lamont & Flug, Washington, D.C., for Alabama, California, Connecticut, Idaho, Indiana, Maryland, Michigan, Mississippi, Montana, Ohio, South Dakota, Vermont, Wisconsin, and Wyoming.

Dave Frohnmayer, Atty. Gen., Donald C. Arnold, Chief Counsel, Dept. of Justice, Salem, Or., for State of Or.

## MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

Before the Court are defendants' motions to dismiss three consolidated cases, each asserting an interest in a Department of Energy escrow fund created as a result of the DOE's settlement of crude oil price control overcharges. The plaintiffs, manufacturers and utilities with claims upon the escrow, seek declaratory and injunctive relief based upon the possibility that there may be insufficient funds to satisfy their claims in full. Defendants argue that certain of the claims are unripe or moot, and that plaintiffs lack standing to bring the remaining claims. For the reasons discussed below, the Court agrees.

## I

### Background

The Department of Energy administered price controls on crude oil produced in the United States from August 19, 1973 through January 27, 1981. During that period, some producers overcharged for the crude oil they produced.

Congress authorized the DOE to seek restitution of the overcharges. *See* Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 751 *et seq.* (incorporating the enforcement scheme set forth in the Economic Stabilization Act, 12 U.S.C. § 1904). Pursuant to its authority under these statutes, DOE sought refunds from many oil producers.

The M.D.L. 378 *Stripper Well* litigation consolidated a number of cases brought by oil producers to enjoin DOE and its predecessor, the Federal Energy Administration, from the enforcement of price control regu-

lations. The court enjoined enforcement of the regulations, but it also ordered plaintiffs to place in escrow the amount that would have been collected had they been upheld. On appeal the regulations were upheld. *In re The Department of Energy Stripper Well Exemption Litigation*, 690 F.2d 1375 (TECA 1982).

In connection with a court-approved settlement of the *Stripper Well* litigation, DOE issued a Modified Statement of Restitutionary Policy For Crude Oil Cases (MSRP), 51 Fed.Reg. 27,899 (August 4, 1986). The MSRP specified that 20 percent of crude oil overcharges recovered would be reserved for claims by non-parties to the settlement. The remaining 80 percent would be divided between the States and federal government. DOE implemented MSRP by establishing procedures for non-parties to file claims for crude oil overcharges. *See Notice Explaining Procedures for Processing Refund Applications in Crude Oil Refund Proceedings under 10 C.F.R. Part 205, Subpart V*, 52 Fed. Reg. 11737 (April 10, 1987). The OHA Notice established the evidentiary procedures to be applied in considering the claims of end-users of petroleum products and the method by which DOE would calculate refunds to successful claimants. End-user claimants would be accorded a presumption of injury from the crude oil overcharges upon proof of their volumes of petroleum product purchases. 52 Fed.Reg. at 11771–92.

With respect to the calculation of refunds, the OHA Notice specified that the agency would employ a "volumetric method" for allocating overcharges. Under this method, claimants would receive refunds equal to the number of gallons of petroleum products they purchased during the period of price controls multiplied by a per-gallon or volumetric refund amount. The volumetric refund amount is calculated by dividing the total crude oil refund monies currently available by the total consumption of petroleum products in the United States during the period of price controls. As additional crude oil refund monies became available, claimants would automatically receive a share of the additional funds.

## II

### The Present Litigation

*Civil Action No. 87–2717.* Count One asserts that the 20 percent held by OHA in escrow for end-user claimants may be insufficient to satisfy the claimant's claims. To avoid this possibility, plaintiffs ask the Court to bar any future payments from the remaining 80 percent of the escrow until a determination is made by the Court "to what extent, if any, such funds are necessary to provide plaintiffs and the members of the plaintiffs class with the restitution to which they are entitled." Complaint para. 45.

Count Two addresses the distribution of monies from the 20 percent escrow fund to the states pursuant to legislation enacted in 1982 and to the U.S. Treasury in connection with settlement of DOE enforcement claims.[1] Plaintiffs assert that a portion of that money should have been reserved to satisfy their claims. Plaintiffs seek to remedy this by having that sum withheld from future distributions to the federal government and the states.[2]

*Civil Action No. 88–0911.* This complaint carries on the theme advanced in No. 87–2717, asserting that because of the DOE's refund procedures there may not be sufficient money in the escrow to pay their claims in full. Count One asserts that the 20 percent reserve will be insufficient to satisfy end-user claims. Counts Two and Three assert claims upon portions of the distributions made pursuant to the DOE settlements and to the Warner Amendment.

The principal difference between the two complaints is that No. 87–2717 is grounded on DOE's implicit rejection of plaintiffs' arguments in establishing refund procedures while No. 88–0911 is based on the explicit rejection of the same arguments in *Ernest E. Allerkamp et al.,* 17 DOE ¶ 85,079 (1988) and *Shell Oil Company,* 17 DOE ¶ 85,204 (1988). The two decisions implemented the OHA's previously announced overcharge refund policy.

*Civil Action No. 88–1339.* The third complaint stems from three OHA's decisions awarding crude oil refunds to public transit authorities. *See Tri–County Metropolitan Transit District,* 17 DOE ¶ 85,331 (1988); *Metropolitan Atlanta Rapid Transit Authority,* 17 DOE ¶ 85,243 (1988); *Chicago Transit Authority,* 17 DOE ¶ 85,243 (1988). Plaintiffs assert that since DOE has determined that 80 percent of the crude oil overcharge refunds will go to state and federal governments, other governmental units, including transit authorities, are not entitled to awards from the remaining 20 percent. Plaintiffs further argue that these and possible future awards may lead to an insufficiency in funds available to satisfy their claims.

## III

### Ripeness

The ripeness doctrine is designed to "prevent the courts, through the avoidance of

---

1. The distribution to the states was made pursuant to Section 155 of the Further Continuing Appropriations Act, Pub. L. No. 377, 96 Stat. 1830, 1919 (Dec. 21, 1982). Commonly known as the "Warner Amendment" after its chief sponsor in the Senate, Section 155 provided for a one time distribution of oil overcharges funds to the states. Other distributions to the States and the U.S. Treasury were made pursuant to the settlement of various oil overcharge cases.

2. Counts III and IV are no longer at issue. In Count III, plaintiffs claim injury from DOE's alleged failure to implement the "full parity" volumetric adjustment referenced in the OHA notice. On October 19, 1987, DOE implemented the "full parity approach". 52 Fed.Reg. 39,987, 39,990 (October 26, 1987). Defendants assert that the issue is, therefore, moot, and the Court agrees. Plaintiffs argue that OHA might reverse its policy some day, but such unsupported speculation is insufficient to overcome defendants' concrete showing of no reasonable likelihood that the alleged wrong will be repeated. Next plaintiffs assert that the "full parity" concept requires OHA to calculate refunds by reference to other distributions to the state and federal governments. Neither Count III nor the corresponding prayer for relief make reference to these distributions.

Count IV alleges that a possible "investigation by OHA into plaintiff's absorption of crude oil overcharges runs afoul of OHA precedent and will expose plaintiffs to the time and expense of multiple proceedings. Complaint para. 57. Plaintiffs, however, have withdrawn this count. Plaintiffs Mem. of June 27, 1989 at 1 n. 1, 5 n. 3.

premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

■ As the Supreme Court has stated, ripeness is determined by balancing the fitness of the issues for judicial decision against the hardship to the parties of withholding court consideration. *Abbott Laboratories*, 387 U.S. at 149, 87 S.Ct. at 1515.

Relevant to the first prong of that test are decisions addressing the reviewability of agency actions threatening to cause harm at some future time.[3] "A hypothetical threat is not enough." *United Public Workers v. Mitchell*, 330 U.S. 75, 90, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947). If the alleged injury is a future one, "it must be clearly discernible." *Martin Tractor Co. v. FEC*, 627 F.2d 375, 379 (D.C.Cir.1980). "The mere *potential* for future injury ... is insufficient to render an issue ripe for review." *Alascom, Inc. v. FCC*, 727 F.2d 1212, 1217 (D.C.Cir.1984).

■ Plaintiffs' broad claims that the escrow fund may prove insufficient are plainly unripe, since they involve nothing more than a mere potential for future injury.[4] *Alascom*, 727 F.2d at 1217. *Cf. Getty Oil*

*Co. v. DOE*, 865 F.2d 270, 276 (TECA 1988) (end-user claimants interests are insubstantial and not legally protected). The gravamen of all three complaints is the same: that because of various decisions by OHA, there will be insufficient money in escrow to satisfy plaintiffs' claims in full. The key issue here—whether the reserve will meet plaintiffs' claims in full—depends on the outcome of a number of future events, none of which can be anticipated or predicted with certainty.

Plaintiffs' assertions to the contrary are based on no more than their speculations as to what OHA will do in future cases. It is this very kind of hypothesizing about future events that the ripeness doctrine was intended to prevent. *See Abbott Laboratories*, 387 U.S. at 148–49, 87 S.Ct. at 1515 (ripeness requires that effects of agency decision "must be felt in a concrete way by the challenging parties").

Furthermore, plaintiffs' arguments about the future sufficiency of the escrow fund sit atop a pyramid of predictions and assumptions, one piled on top of another, about what claimants will do, what OHA will do and what the various courts that hears these claims will do.[5] Plaintiffs unintentionally have illustrated the hazards of such guesswork. In other pending litigation concerning crude oil overcharges, they asserted that the 20 percent reserve would most likely prove adequate to cover their claims[6]—a position diametrically opposite

---

**3.** Plaintiffs repeatedly cite *Placid Oil Co. v. FERC*, 666 F.2d 976, 981 (5th Cir.1982) for a four-prong ripeness test. To the extent that they appear to suggest that this is the test in this Circuit, they are incorrect. While some of the factors in *Placid Oil* have been cited in decisions here, the Court of Appeals for this Circuit has adopted a more flexible ripeness test. *See e.g. Natural Resources Defense Council, Inc. v. EPA*, 859 F.2d 156, 166–67 (D.C.Cir.1988); *State Farm Mutual Auto Ins. v. Dole*, 802 F.2d 474, 479–80 (D.C.Cir.1987).

**4.** Plaintiffs also maintain that distributions to third parties, e.g. the states, decreased the size of refunds plaintiffs have already received. In the first place, the claim is unripe since DOE has not addressed it in connection with plaintiffs' refund applications. Second, as discussed *supra*, plaintiffs lack standing to challenge distributions to third parties.

**5.** At one point, for example, plaintiffs hypothesize that an OHA decision awarding refunds to farmers may result in the future filing of "many millions of claims by owners and operators of automobiles." Notice of Filing at 2. Given that the average motorist would receive a six dollar refund, this assertion is far too speculative to support a finding that the threat of such claims makes this case ripe.

**6.** *See Getty Oil Co. v. DOE*, 4 (CCH) Energy Mgmt. ¶ 26,591 (D.Del.1987). There the Court observed:

"As noted by counsel for [Consolidated Edison *et al.*] the 20 percent reserve will most likely cover all private claims and the total amount distributed to end users will probably not exceed 15." Statement of Philip P. Kalodner Esq., Counsel for Consolidated Edison *et al.*, Transcript of Status Conference, Dkt. 220, at 91–92, 153.

to the one they now assert and one they now repudiate.[7]

Judicial review at this point would constitute. no more than an exercise in speculating about the outcome of the unpredictable and the likelihood of the unforeseeable. Because of the absence of a concrete or even reasonably foreseeable injury, the judicial interest in postponing review is strong.

To overcome the court's interest in postponing review, a plaintiff must show that delay would cause hardship. The hardship must be "immediate, direct and significant." *Consol. Coal v. Fed. Mine Safety & H. Rev. Com'n*, 824 F.2d 1071, 1077 (D.C.Cir.1987) *quoting, State Farm Mutual Automobile Ins. Co. v. Dole*, 802 F.2d 474, 480 (D.C.Cir.1986). *See also State Farm*, 802 F.2d at 480 ("hardship will be found wanting if there are too many 'ifs' in the asserted causal chain linking the agency's action to the alleged hardship"). The hypothesized harm here—the possibility that there might be insufficient money in the escrow—is not direct or immediate. Nor is it clear that the harm would be significant.

Under similar circumstances, in *RJG Cab Co. v. Hodel*, No. 83–3265 (E.D.Pa. August 19, 1985), the court rejected on ripeness grounds a claim that the distribution of $200 million in overcharge funds to the states pursuant to the Warner Amendment unlawfully deprived plaintiffs of a right to claim a proportionate share of those funds. The court explained that the claims would become ripe only when each "application for a Special Refund is granted by the OHA *and* the OHA determines that there are insufficient funds [in] the [f]und to compensate [each plaintiff]." Slip. op. at 22–23 (emphasis added).

For these reasons, it is clear plaintiffs' complaints are unripe at this juncture.

*Id.* at 26,855.

**7.** Plaintiffs attribute their about face on this issue to an unanticipated change in circum-

## IV

## Standing

█ Defendants also assert—and the Court agrees—that plaintiffs lack standing to challenge the payment of monies from the escrow. *See* Count II of No. 87–2717, Counts II and III of No. 88–0911 and all of No. 88–1339. *See e.g. Payne 22, Inc. v. United States*, 762 F.2d 91 (TECA 1985) (rejecting a challenge to payment of $25 million to the U.S. Treasury in connection with a settlement of overcharge claims). In *Atlantic Richfield Co. v. DOE*, 618 F.Supp. 1199 (D.C.Del.1985), the Court concluded that a claimant to a DOE escrow "lack standing to challenge OHA's distribution of funds to third parties." *Id.* at 1213 n. 23. Likewise, in *RJG Cab Co. v. Hodel*, end-users were prohibited from challenging the distribution of crude oil overcharge proceeds to the states pursuant to the Warner Amendment. *See also Cities Service Co. v. DOE*, 715 F.2d 572 (TECA 1983); *Jaymark Corp. v. Phillips Petroleum Co.*, C.A. No. 83–0592, 1983 WL 2028 (D.D.C. December 21, 1983).

Plaintiffs suggest that these cases are distinguishable because they are based on concerns related to the difficulty of the requisite economic analysis. The argument lacks a basis in fact. None of the cases cited turns on economic analysis problems. Equally unavailing are the plaintiffs' citations to standing decisions in civil rights and tax law, given an abundance of contrary authority in more closely analogous cases. Plaintiffs also rely on *Florida Rock Industries Inc. v. John S. Herrington et al.*, 700 F.Supp. 605 (D.D.C.1988) and *Mid-America Dairymen Inc. v. Herrington*, 878 F.2d 1448 (TECA 1989). The decisions are unhelpful. In the first place, neither turns on, or even discusses, the standing doctrine. Second, both focus on issues not present here. In *Florida Rock* and *Mid-America*, for example, DOE had denied plaintiffs' claims; here, plaintiffs' claims have been approved.

stances. It is the possibility of such unexpected changes that prompts the Court's conclusion that it would be better to postpone review.

■ Finally, the plaintiffs assert that the doctrine of judicial estoppel prevents defendants from raising their standing argument.[8] The claim rests on misinterpretations of both the facts and the law.[9]

Plaintiffs wrongly assert that the defendants' standing arguments are inconsistent with two statements they made in connection with the *Stripper Well* litigation. The *Stripper Well* agreement to which defendants were parties provides, in part, that "OHA may reserve a reasonable portion of funds from each ... proceeding to satisfy potentially provable claims" by "members of the plaintiffs' class". In a filing with the *Stripper Well* Court, defendants apparently promised that claimants to crude oil overcharges "can challenge the soundness of OHA's application of that policy in ruling on the claimant's application for a refund." Mem. of July 18, 1988 at 28–29.

Neither statement discusses standing; both are vague and short on substance or specifics. Such wispy promises cannot preclude a challenge to plaintiffs' standing to raise these issues in this forum. In any event, the *Stripper Well* agreement supports—rather than undermines—plaintiffs' standing arguments. The agreement explicitly provides that it "confers no ... enforcement rights upon any non-Party." Paragraph VI.B. The plaintiffs are non-parties to the agreement and, thus, have no enforcement rights under the terms of the agreement.

■ Judicial estoppel may be applied only when the earlier statements are unequivocally inconsistent with the later ones. *Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir.1990). Since neither of the prior statements here addresses or even mentions standing, they cannot be described as unequivocally or clearly inconsistent with defendants' standing argument.

■ The purpose of judicial estoppel is to prevent parties from "playing fast and loose" with the Court. There is absolutely no evidence that defendants have done so. Moreover, even if defendants were estopped, the intervenors would not be. Finally, standing is jurisdictional. If the defendants were estopped from raising the issue, this Court would be obliged to consider it *sua sponte*.

In sum, it is clear that none of the complaints are ripe for review and that plaintiffs lack standing to bring Count II of No. 87–2717, Counts II and III of No. 88–0911 and all of No. 88–1339. Counts III and IV of No. 87–2717, moreover, are moot.

Accordingly, it is this 14th day of May 1990

ORDERED That the complaints be and they are hereby dismissed.

---

8. Judicial estoppel precludes a party from taking a position inconsistent with one previously taken with respect to the same facts in an earlier litigation. *Himel v. Continental Ill. Nat. Bank*, 596 F.2d 205, 210–11 (7th Cir.1979); *United Virginia Bank v. Saul Real Estate*, 641 F.2d 185, 190 (4th Cir.1981).

9. Plaintiff's claim that defendants are "play[ing] fast and loose with the Court", mem. of August 8, 1988 at 16, is unwarranted and unhelpful.