CONSOLIDATED EDISON COMPANY
OF NEW YORK, INC. et al.,
Plaintiffs,

v.

Spencer ABRAHAM, Secretary, U.S.
Department of Energy, et al.,
Defendants.

No. CIV. A. 00–2009(RMU).

United States District Court,
District of Columbia.

Aug. 27, 2001.

Philip P. Kalodner, Gladwyne, PA, for plaintiff.

Thomas H. Kemp, Stephen C. Skubel, U.S. Dept. of Energy, Washington, DC, for defendant.

*MEMORANDUM OPINION*

URBINA, District Judge.

GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the court on the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The defendants alternatively move for summary judgment pursuant to Federal Rule of Civil Procedure 56. The plaintiffs, who bring this suit as a class action,[1] also move for summary judgment. The plaintiffs include: Consolidated Edison of New York, Long Island Lighting Company, Orange and Rockland Utilities, South California Edison, Pacific Gas & Electric, San Diego Gas & Electric, International Paper, Champion International, and Weyerhauser Company. The plaintiffs claim that the Department of Energy's ("DOE") Office of Hearings and Appeals ("OHA") failed to carry out its duty to properly administer the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note ("ESA"). Specifically, the plaintiffs allege that the OHA's award of crude-oil-overcharge refunds to the Huntsman Corporation ("Huntsman") is invalid because the OHA failed to fully investigate Huntsman's claim before making the award. *See* Compl. at 1. The defendants, who are named in their official capacities, are DOE Secretary Spencer Abraham and OHA Director George Breznay.

The defendants move to dismiss this action under Rule 12(b)(6) on the ground that the plaintiffs fail to state a claim for

---

1. Although the plaintiffs have not yet moved for class certification under Federal Rule of Civil Procedure 23, the defendants never contest that the plaintiffs satisfy the criteria to proceed as a class. Without deciding the issue at this point, the court will assume for the purposes of the pending motions that the plaintiffs may proceed as a class.

which relief can be granted. They also move for summary judgment on the ground that the Huntsman decision was a legal exercise of the OHA's agency discretion. *See* Mot. to Dis. at 2. The plaintiffs counter that the Huntsman decision was an abuse of the OHA's discretion because the agency failed to investigate four critical criteria that a claimant for crude-oil refunds must satisfy. *See* Pl.'s Opp'n to Mot. to Dis. ("Pl.'s Opp'n") at 1.

For the reasons that follow, the court holds that the OHA has acted in accordance with legal precedent and within the limits of its discretion. Accordingly, the court will grant the defendants' motion for summary judgment.

## II. BACKGROUND

From 1973 to 1981, United States crude-oil producers overcharged for their product, in violation of price controls administered by the DOE and its predecessor agencies. *See* Pl.'s Mot. for Summ. J. at 4. The DOE recovered the overcharges pursuant to the ESA, which provided that those recoveries be distributed as restitution to parties who were injured by the overcharges. *See* Pl.'s Mot. for Summ. J. at 4. Section 209 of the ESA authorized the government to obtain restitution of monies received in violation of the DOE's price controls, while Section 210 provided a separate cause of action for private persons to recover money damages. *See* Mot. to Dis. at 2. Congress later incorporated these sections of the ESA into the Emergency Petroleum Allocation Act of 1973 ("EPAA"), 15 U.S.C. § 751–760h.[2]

The DOE initially implemented the ESA through a wide variety of remedies, such as restitution by means of payment to the United States Treasury (*Payne 22, Inc. v.*

*United States*, 762 F.2d 91, 94 (Em.App.1985)), and restitution by means of payments to state energy programs (*United States v. Exxon*, 773 F.2d 1240 (Em.App.1985)). *See id.* at 3. But in a 1986 settlement agreement, the DOE adopted a uniform restitutionary policy for all crude-oil-overcharge recoveries obtained under ESA Section 209. The agreement, reached in *In Re the Department of Energy Stripper Well Exemption Litigation*, 653 F.Supp. 108, 113 (D.Kan. 1986), established escrow accounts for a broad spectrum of crude-oil users, including refiners, resellers of refined petroleum, retailers of gasoline and diesel fuel, airlines, surface transporters, and utility companies. *See id.* In return, the agreement required these crude-oil users to waive all existing and future claims to any other crude-oil overcharges recovered by the DOE. *See* 653 F.Supp. 108 at 112.

Non-parties to the *Stripper Well* agreement had the right to share in the escrows created for their categories. Alternatively, they could opt out of the *Stripper Well* funds and file claims in future DOE refund proceedings. *See* Pl.'s Mot. for Summ. J at 6. Those refund claims must be made pursuant to the DOE's procedures, delineated in 10 C.F.R. § 205, Subpart V. The OHA, which is authorized to review and investigate these "Subpart V" claims, has established eligibility rules. *See* 10 C.F.R. § 205, Subpart V. To qualify for an overcharge refund claim, a party must have purchased crude oil or crude-oil products during the price control years of 1973 to 1981. *See* Mot. to Dis. at 5. In 1992, the agency specified which products could qualify for a Subpart V claim:

> We will treat all products covered by the EPAA as having been produced at a crude oil refinery. Products not covered

---

**2.** For a more detailed discussion of the regulatory framework of the EPAA and ESA, see

*Phoenix Petroleum Co. v. FERC*, 95 F.3d 1555, 1559–63 (Fed.Cir.1996).

by the EPAA will be treated differently. It will be the burden of the applicant to establish that a product not within the definition of covered products under the EPAA was in fact produced at a crude oil refinery . . .

Notice of General Interest Concerning DOE's Crude Oil Refund Program, 57 Fed.Reg. 30731 at 30732 (July 10, 1992) ("Notice of General Interest"). The DOE had earlier clarified the definition of "covered products" in Clarifications to the Definitions of Covered Products, 40 Fed.Reg. 2795 at 2796 (January 16, 1975). The Huntsman products disputed by the plaintiffs—benzene, butane, and propane—are all included in the language of this definition.

Of the funds recovered in these OHA proceedings, 80 percent is awarded equally to the United States Treasury and the states, and 20 percent is available for claimants. *See* Pl.'s Mot. for Summ. J. at 7. Because all claimants are paid out of the same pool of resources, the amount awarded to any one claimant will affect the amount recovered by another. *See id.* at 8.

In 1988, the Huntsman Corporation initiated a claim.[3] The application was based on Huntsman's purchases of motor gasoline, diesel fuel, motor oil, aviation fuel, propane, butane, and benzene. *See* Mot. to Dis. at 8. Over the next 12 years, the OHA and Huntsman discussed the claim. *See* Pl.'s Mot. for Summ. J. at 12–16. On June 22, 2000, the OHA issued a decision awarding Huntsman about $3.6 million in overcharge refunds. *See id.* at 16.

The plaintiffs here, all non-*Stripper Well* claimants, argue that the OHA failed to carry out its responsibility to thoroughly investigate Huntsman's claim. In their motion for summary judgment, the plaintiffs contend that the Huntsman decision should be vacated and remanded to the OHA for further scrutiny. *See id.* at 1. The defendants cross-move for summary judgment, asserting that the OHA acted within its legal discretion when it made the Huntsman award. *See* Mot. to Dis. at 2. For the reasons that follow, the court will grant the defendants' motion for summary judgment.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine what facts are "material," a court must look to the substantive law on which each claim rests. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor

---

**3.** In 1988, the present Huntsman Corporation was known as the El Paso Products Company. Huntsman changed names frequently during the period in which the OHA investigated its claim. For the sake of convenience and to avoid confusion, the court will refer to the company as the Huntsman Corporation throughout this Memorandum Opinion.

and accept the nonmoving party's evidence as true. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *See id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *See Greene v. Dalton*, 164 F.3d 671, 674 (D.C.Cir.1999). Rather, the nonmoving party "must come forward with specific facts" that would enable a reasonable jury to find in its favor. *See id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

### B. Standard of Review Under the EPAA

■ Acknowledging the administrative complexity of this overcharge-refund-distribution system, courts have afforded the DOE considerable deference in EPAA/ESA agency actions. The standard first delineated by the Temporary Emergency Court of Appeals ("TECA")[4] remains in effect:

> [T]his court will set aside an EPAA/ESA agency action only if it is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence. We recognize DOE's administrative expertise, accord the agency's determination great deference, and must approve the DOE decision if there is a rational basis for it.

*Phoenix Petroleum*, 95 F.3d 1555 at 1567. The court, therefore, reviews the OHA's decision in accordance with this standard.

### C. Motions for Summary Judgment

The plaintiffs claim there are at least four criteria that the OHA should have considered prior to awarding Huntsman with a crude-oil refund. These criteria are: (1) the source of the product purchased by the claimant must have been crude oil, not some other substance, such as natural gas; (2) the crude-oil source of eligible products must have been refined by a crude-oil refinery participating in the Entitlements Program; (3) the claimant must be an "arms-length" purchaser from a crude-oil refinery; and (4) the claimant must have been a product end-user, not a reseller. *See* Pls.' Mot. for Summ. J. at 9–12. The plaintiffs derive most of these criteria from language in an earlier OHA decision, *Goodyear Tire & Rubber Company*, 24 DOE ¶ 85,039 at 88,117 (1994), and a decision from the Court of Appeals for the Federal Circuit, *Goodyear Tire & Rubber Co. v. Department of Energy*, 118 F.3d 1531 (Fed.Cir.1997).

---

4. Exclusive jurisdiction to entertain appeals from district courts in cases and controversies arising under the ESA and its subsequent regulations once belonged to the Temporary Emergency Court of Appeals ("TECA"). The TECA was established by Section 211(b)(2) of the ESA, as incorporated into Section 5(a)(1) of the EPAA. The court was dissolved on April 29, 1993, however, and its jurisdiction was transferred to the United States Court of Appeals for the Federal Circuit. The Federal Circuit has adopted precedent of the TECA as its own. *See Texas American Oil Corp. v. Department of Energy*, 44 F.3d 1557 (Fed.Cir. 1995).

■ First, the plaintiffs contend that while only products derived from crude oil could have been directly affected by overcharges, three of the products for which Huntsman claimed refunds could have been produced from either crude oil *or* natural gas. *See* Pl.'s Mot. for Summ. J. at 17. Therefore, the plaintiffs declare, the OHA should have looked into the original source of the Huntsman products before granting the award.

The plaintiffs rely on the OHA's *Goodyear* decision for its contention about the source of the Huntsman products. *See* 24 DOE ¶ 85,039 at 88,117. In *Goodyear,* the OHA noted that because the refund proceeding is designed to make restitution to persons harmed by crude-oil overcharges, "it is reasonable for OHA to require an applicant to demonstrate that the particular product it purchased was produced in a crude oil refinery and not, for example, in a petrochemical refinery." *See* 24 DOE ¶ 85,039 at 88,117. The plaintiffs also cite *Phoenix Petroleum,* 95 F.3d 1555 at 1567, for the notion that deference is only appropriate when "there is a rational basis" for the decision. *See* Pl.'s Reply at 3. The OHA's failure to look into the source of Huntsman's products is fatal, the plaintiffs contend, because it fails to pass a reasonableness test. *See* Pl.'s Mot. for Summ. J. at 19.

But the OHA has never required that all eligible products have crude oil as their source. Indeed, as the defendants note, legal precedent indicates that an examination of the source of a claimant's products is not necessary so long as the product is covered by the EPAA. *See* Mot. to Dis. at 10–11. DOE regulations protect all products covered by the language of the EPAA regardless of whether they were purchased from or originated in a crude-oil refinery. In *Goodyear,* the Federal Circuit, quoting the Notice of General Interest, held:

> [W]e will presume that a claimant incurred a crude oil overcharge in the purchase of a product during the relevant period if either [1] that product was named as a covered product in regulations promulgated pursuant to EPAA or [2](a) was purchased from a crude oil refinery or (b) originated in a crude oil refinery and was purchased from a reseller who did not substantially change its form.

118 F.3d at 1534. In other words, "the test for whether the refined product was produced by a crude-oil refinery is *an alternative* to the earlier test of whether the product was covered by the EPAA, to allow the inclusion of products *not* covered by the EPAA." *See* Mot. to Dis. at 11.

In fact, the OHA decision on which the plaintiffs base their argument was actually a case in which the issue was whether propylene, a non-EPAA covered product, could be eligible for a crude-oil refund. *See Goodyear,* 24 DOE ¶ 85,039 at 88,117. The product's source became an issue because propylene fell within the second prong of the applicable test. Thus, the language quoted by the plaintiffs does not apply to a case in which the products in question are specifically covered by the EPAA.

■ The plaintiffs' second proposed criterion similarly lacks a sound legal basis. The plaintiffs contend that the crude-oil source of eligible products must have been refined by a crude-oil refinery participating in the Entitlements Program. *See* Pl.'s Mot. for Summ. J. at 10. This was a DOE program to equalize the cost of crude oil by spreading an overcharge to any one refiner to all U.S. refiners *pro rata. See id.* at 5. The plaintiffs argue that because any overcharge made on a non-program-participating refinery (such

as a petrochemical plant) would affect only the purchasers of that plant's products, those purchasers should be excluded from ESA recovery. They should only be allowed to recover from the suppliers of their particular plants, not the ESA pool. *See id.* at 10.

Again, the only basis the plaintiffs offer for this proposed criterion is the oft-quoted "reasonable" language of *Goodyear*, 24 DOE ¶ 85,039 at 88,117, and the "rational basis" standard of judicial deference. *See* Pl.'s Reply at 5–9. Because the OHA based its decision to consider the Huntsman products on the Notice of General Interest and subsequent case law, its failure to contemplate the plaintiffs' second criterion was decidedly rational. As the defendants correctly note, the "OHA has established a bright-line rule that all products covered by the EPAA are eligible for a refund, regardless of their source." *See* Mot. to Dis. at 12.

■ The plaintiffs' third criterion is that the claimant must be an "arms-length" purchaser from a crude-oil refinery, not an integral part of the refinery itself. *See* Pl.'s Mot. for Summ. J. at 11. Claimants must be "end-users" to recover refunds in these DOE proceedings. *See id.* at 10. The plaintiffs argue that crude-oil refiners already recovered once in the *Stripper Well* agreement, and could attempt to get more than their fair share by claiming products transferred to a wholly owned subsidiary. *See id.* They speculate that because Huntsman was at one time a wholly owned subsidiary of El Paso Natural Gas, the company could be attempting to repackage its products to get a second bite at the apple. They further hypothesize that Huntsman could have participated in the further refining of crude oil, which would make Huntsman a refiner, not an end-user. *See* Pl.'s Reply at 11–13.

■ This argument fails to recognize, however, that Huntsman is entitled to an end-user presumption of injury because its products are covered by the EPAA. *See* Mot. to Dis. at 13. The OHA developed a rebuttable presumption of injury to facilitate the administration of the crude-oil program. In *A. Tarricone, Inc.*, 15 OHA ¶ 85,495 at 88,894 (1987), the OHA established that if prospective claimants could show they were "ultimate consumers" of petroleum products, they would not have to demonstrate that they could not pass the costs through to consumers. To rebut this presumption of injury, an opposing party would have to provide evidence showing lack of injury. *See Berry Holding Co.*, 15 OHA ¶ 85,405 at 88,797 (1987).

The plaintiffs have failed to provide any evidence that could show a lack of injury to Huntsman. They only offer speculative theories:

> The absence of any information as to from whom Huntsman acquired the product leaves open the possibility that the refinery operation consisted of the initial refining of crude oil, possibly by another affiliate of El Paso Natural Gas, of which Huntsman was a wholly owned subsidiary, and then a continuation of the refining ... by Huntsman, with the fully refined products being sold by Huntsman.

Pl.'s Reply at 11–12.

As articulated above, EPAA/ESA agency actions receive considerable judicial deference. A court will intervene only if the action exceeds the agency's authority, or is based on findings that are not supported by substantial evidence. In this case, as in prior cases, the court recognizes DOE's administrative expertise and must approve the DOE's decision if there is a rational basis for it. The court concludes that the DOE has fulfilled its responsibility here by expressly raising the issue of Huntsman's

end-user status and fully considering it. During the 12 years the OHA investigated the Huntsman claim, it received and reviewed copious information relevant to the claim. The defendants note the various information Huntsman submitted in support of its claim:

> The documentation included expense reports for the raw material purchased and Internal Revenue Service Form 4136, Computation of Credit for Federal Tax on Gasoline, Special Fuels, and Lubricating Oil. This documentation was contemporaneous to the period of petroleum price controls, August 1973 through January 1981.

Mot. to Dis. at 8. Because the DOE has explained that the "OHA acted responsibly, carefully investigated the claimed volumes, and approved only those volumes which were reasonable and had supporting documentation," the court determines that DOE's decision had a rational basis. *See id.*

 The fourth criterion promulgated by the plaintiffs is akin to the third—the claimant must not resell the product in essentially the same form. *See* Pl.'s Mot. for Summ. J. at 23. In other words, the plaintiffs reiterate that the claimant must have been a product end-user, not a reseller. The plaintiffs again offer nothing more than speculation that Huntsman may have been a reseller instead of an end-user. *See id.* Once again, the plaintiffs have failed to provide any evidence that would provide the court with a legitimate reason to overturn the agency's decision. Accordingly, the court grants the defendants' motion for summary judgment.

## IV. CONCLUSION

For all these reasons, the court denies the plaintiffs' motion for summary judgment and grant the defendants' motion for summary judgment. An Order directing

the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously issued this 27 day of August, 2001.