The **GOODYEAR TIRE & RUBBER CO., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF ENERGY, et al., Defendants.**

**Civil Action No. 94–1305 (HHG).**

United States District Court,
District of Columbia.

April 17, 1996.

James Baller, Baller Hammett, P.C., Washington, DC, Neal Rountree, Law Department, The Goodyear Tire & Rubber Company, Akron, OH, for Plaintiff.

Don W. Crockett, John L. Gurney, Office of General Counsel, U.S. Department of Energy, Washington, DC, for Defendants.

*MEMORANDUM AND ORDER*

HAROLD H. GREENE, District Judge.

Plaintiff, Goodyear Tire & Rubber Co., brings this suit to appeal from portions of a final order in the Department of Energy's ("DOE") crude oil refund distribution proceedings denying Goodyear a volumetric refund based on its purchases of six petroleum products. This matter is currently before the Court on the parties' cross motions for summary judgment.

**I**

**A. Regulatory Background**

In 1970, Congress enacted the Economic Stabilization Act ("ESA"), giving the President the authority to stabilize prices, rents, wages and salaries, and authorizing the courts to order restitution of funds received in violation of any such order or regulations. 12 U.S.C. § 1904 *note* (1976). In 1973, Congress enacted the Emergency Petroleum Allocation Act ("EPAA"), to ensure a fair allocation of available petroleum supplies at equitable prices. 15 U.S.C. § 751 *et seq.* (1982). Congress incorporated much of the ESA into the EPAA's provisions. 15 U.S.C. § 754. The powers set out in the EPAA were transferred to DOE upon its creation in 1977. 42 U.S.C. § 7151 (1994). Under the EPAA, DOE established regulations setting out the procedures it would use in considering applications for the distribution of funds recovered by DOE from crude oil producers and resellers to parties injured by the overcharges. These procedures are known as "subpart V" regulations. *See* 10 C.F.R. § 205.280–205.288 (1995).

In 1986, Congress promulgated the Petroleum Overcharge Distribution and Restitution Act of 1986 ("PODRA"). 15 U.S.C. § 4501–07 (1994). PODRA imposes an affirmative duty on DOE, through its Office of Hearings and Appeals ("OHA"), to identify persons injured by petroleum overcharges, to establish the amount of such injury, and to make restitution to such persons using funds recovered from companies which violated the petroleum price controls. 15 U.S.C. § 4502(b) (1994).

To aid in processing the crude oil overcharge refund applications, OHA established a presumption of injury for end-users (ultimate consumers) whose businesses are unrelated to the petroleum industry. *See* 6 Fed. Energy Guidelines ¶ 90,512, 90,718 (1987). Such end-users need only establish the volume of petroleum products that they purchased during the control period, not that they in fact absorbed the overcharges. *Id.* Other claimants, including end-users affiliated with petroleum companies and companies which have purchased products from end-users, must present detailed evidence of injury. *See id.*

DOE initially established a standard addressing which refined petroleum products would be eligible for volumetric refunds in a series of adjudications. In its first decision, OHA focused on whether the product was covered by the EPAA and produced from a crude oil refinery, but stated that it would "presume that any product that was regulated by the DOE at any time during the August 19, 1973 through January 27, 1981 Settlement Period meets that standard." *Hartsville Oil Mill*, 17 DOE ¶ 85,110, 88,237 (1988). After this initial standard was established, OHA granted numerous refunds for petroleum products on the basis that they had been regulated by DOE at any point during the price control period (under the ESA or the EPAA). *See, e.g., Mack–Miller Candle Co.,* 17 DOE ¶ 85,740, 89,408 (1988); *Olmos Construction Co.,* 17 DOE ¶ 85,640, 89,245 (1988). OHA then returned to a more narrow reading of the *Hartsville* standard, stating that coverage under the ESA served only to establish a rebuttable presumption that the product was eligible for a refund, i.e.

that the product was covered by the EPAA and produced by a crude oil refinery. *Montana Sulphur & Chemical Co.*, 20 DOE ¶ 85,625, 85,417 (1990); *see also Great Lakes Carbon Corp.*, 20 DOE ¶ 85,748, 89,755 (1990) (product eligibility standard is whether the product was covered by the EPAA and produced by a crude oil refinery).

In 1992, after notice and comment, OHA issued a rule announcing a change in the agency's standard for determining product eligibility. 57 Fed.Reg. 30,731 (July 10, 1992). OHA stated that:

> We will presume that an applicant incurred a crude oil overcharge in the purchase of a petroleum product during the relevant period if either that product was named as a covered product in regulations promulgated pursuant to the EPAA, or (a) was purchased from a crude oil refinery or (b) originated in a crude oil refinery and was purchased from a reseller who did not substantially change its form.

*Id.* at 30,732.

## B. Goodyear's Refund Claims

On December 22, 1987, Goodyear filed a refund application for crude oil overcharges. OHA consolidated Goodyear's application for review with those of five other tire manufacturers. OHA granted some of Goodyear's claims, but, relying on the product eligibility standard of regulation under the EPAA, denied or deferred other claims. *The Firestone Tire & Rubber Company, et al.*, 21 DOE ¶ 85,396 (1991), A.R. 454. On April 17, 1992, Goodyear moved for reconsideration of its refund claims which OHA had denied or deferred. A.R. 635. Goodyear supplemented its request for reconsideration in light of DOE's promulgation of the 1992 product eligibility rule. Upon reconsideration of Goodyear's claims, OHA found that with respect to most of its claims Goodyear had not satisfied the new product eligibility standard.

Goodyear brings this suit, asserting three challenges to OHA's final order: (1) DOE's 1992 product eligibility rule is invalid and DOE's application of the rule to Goodyear constituted an unlawful retroactive application of a substantive agency rule; (2) DOE unlawfully failed to presume that Goodyear,

as a purchaser of petroleum products from end-users affiliated with petroleum companies, was injured by crude oil overcharges; and (3) assuming the 1992 product eligibility rule is valid, DOE erred in deciding that Goodyear's claims did not satisfy the standard.

## II

Goodyear contends that DOE's 1992 product eligibility standard is unlawful because Congress did not authorize DOE to issue any new regulations in 1992, much less retroactive rules.

The standard of review of a rule promulgated by DOE is governed by section 211(d)(1) of the ESA, which provides that no regulation of DOE shall be set aside unless "the issuance of such regulation was in excess of the agency's authority, was arbitrary or capricious, or was otherwise unlawful under the criteria set forth the in section 706(2) of title 5, United States Code...." *See McCulloch Gas Processing Corp. v. Department of Energy*, 650 F.2d 1216, 1220 (Temp.Emer.Ct.App.1981).

"[A]n administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). DOE's authority to promulgate regulations and controls under the EPAA expired on September 30, 1981 pursuant to a sunset provision. *See* 15 U.S.C. § 760g. However, PODRA provides in relevant part:

> (2) The term "subpart V regulations" means the provisions of Subpart V—Special Procedures for Distribution of Refunds (10 CFR 205.280–205.288) and any amendment made after October 21, 1986, and all precedents and decisions under such regulations....

15 U.S.C. § 4507 (1994). As the Court is required to interpret acts of Congress so as to give meaning to each word of the statute, *Danielsen v. Burnside–Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1230 (D.C.Cir. 1991), this provision can be read in no way other than as an implicit grant of authority to

DOE to promulgate further regulations applicable to the refund proceedings.

■ This conclusion does not, however, end the Court's inquiry into the validity of the 1992 product eligibility rule as applied to Goodyear's claims. Goodyear contends that DOE's application of its 1992 product eligibility rule amounted to an unlawful retroactive application of a legislative rule.

Agencies do not have authority to promulgate retroactive rules unless Congress expressly gives them that authority. *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. at 208, 109 S.Ct. at 471–72. There is no indication in PODRA that Congress meant to authorize DOE to promulgate retroactive rules. The issue for the Court, then, is whether the product eligibility rule was in fact applied to Goodyear's claims in a retroactive manner.

A law is retroactive if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Landgraf v. USI Film Prods.,* 511 U.S. 244, ——, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994) (citations and quotations omitted); *Maitland v. University of Minnesota,* 43 F.3d 357, 361 (8th Cir.1994); *Administrators of the Tulane Educ. Fund v. Shalala,* 987 F.2d 790, 798 (D.C.Cir.1993), *cert. denied,* 510 U.S. 1064, 114 S.Ct. 740, 126 L.Ed.2d 703 (1994). The 1992 product eligibility rule did not create new obligations for Goodyear, nor did it impose a new duty or attach a new disability in respect to transactions or considerations already past. It is less obvious, however, whether the 1992 product eligibility rule, as applied to Goodyear's claims, acted so as to take away or impair a vested right acquired under existing law.

■ A vested right is one that is "fixed, settled, absolute and not contingent upon anything." *Quetel Corp. v. Columbia Communications Int'l, Inc.,* 787 F.Supp. 1, 5 (D.D.C.1992). The mere expectancy of future benefits, or a contingent interest in property founded on anticipated continuance of existing laws, does not constitute a vested right. *Resolution Trust Corp. v. Maplewood*

*Investments,* 31 F.3d 1276, 1288 n. 24 (4th Cir.1994) (citations and quotations omitted).

In the instant case, Goodyear has not pointed to any vested right which has been impaired or taken away by the 1992 product eligibility rule. Goodyear was simply an applicant for a crude oil overcharge refund. The claims at issue had not been approved, nor had the products involved in the claims been determined to be eligible products, prior to the promulgation of the 1992 product eligibility rule. On this basis, the Court finds that DOE did not apply the 1992 product eligibility rule to Goodyear's claims in a retroactive manner. Accordingly, DOE's application of the products eligibility rule to Goodyear's claims was lawful.

### III

Goodyear also challenges two decisions set forth in DOE's final order.

The standard of judicial review of DOE's order is governed by section 211(d)(1) of the ESA which provides that no order of DOE shall be set aside unless such order is "in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence." *See MAPCO Int'l Inc. v. Federal Energy Regulatory Comm'n,* 993 F.2d 235, 239 (Temp.Emer.Ct.App.1993); *Research Fuels, Inc. v. United States Dep't of Energy,* 977 F.2d 601, 606 (Temp.Emer.Ct.App.1992); *Behm Family Corp. v. United States Dep't of Energy,* 903 F.2d 830, 833 (Temp.Emer.Ct.App.1990); *Thriftway Co. v. United States Dep't of Energy,* 867 F.2d 1577, 1580 (Temp.Emer.Ct.App.1989). The department's decisions will be upheld if there is a rational basis for them. *MAPCO Int'l Inc. v. Federal Energy Regulatory Comm'n,* 993 F.2d at 239; *Research Fuels, Inc. v. United States Dep't of Energy,* 977 F.2d at 606; *Behm Family Corp. v. United States Dep't of Energy,* 903 F.2d at 833; *Thriftway Co. v. United States Dep't of Energy,* 867 F.2d at 1580.

■ **A.** With respect to its claims based on purchases from end-users affiliated with petroleum companies, Goodyear contends that DOE acted unlawfully in refusing to

afford it a presumption of injury. Goodyear contends that the logical corollary to the department's refusal to give end-user affiliates a presumption of injury in crude oil overcharge refund proceedings is that consumers who purchase petroleum products from such manufacturers should be afforded a presumption of injury when they apply for an overcharge refund.

As DOE set out in its final order, it is only non-affiliate end-users who are accorded any type of presumption. All other refund applicants must present evidence showing that they were in fact injured by the overcharges. The Court agrees with DOE that "the approach advocated by Goodyear would result in entities receiving restitution for crude oil overcharges they may not have experienced." 24 DOE ¶ 85,039, 88,114 (1994), A.R. 892. Indeed, the fact that affiliated end-user applicants are provided the opportunity to prove absorption of the overcharges, and thus to recover the overcharges in subpart V refund proceedings, illustrates the potential for double recoveries under Goodyear's proposed standard.

The Court will not substitute its judgment for that of the department's where the department's actions are supported by a reasoned analysis such as that which is evident here.[1]

■ **B.** Goodyear's final argument is that DOE misapplied the 1992 product eligibility rule, and erred in determining that the ESA products for which Goodyear submitted claims were not products eligible for an overcharge refund.

To show that the products for which it sought refunds satisfied the 1992 product eligibility standard, Goodyear presented the affidavit of one of its employees, Bert Bishop. Mr. Bishop has worked as a Corporate Account Executive and as a Materials Analyst in Goodyear's Purchasing Department. Based on his experience, Bishop represented that the products for which Goodyear sought refunds were produced by equipment which was physically integrated with crude oil refining operations. A.R. 756–59. Goodyear contended that on the basis of Bishop's affidavit it had satisfied the 1992 product eligibility standard. A.R. 743–49.

OHA found Bishop's affidavit to be too general in nature, and requested that Goodyear provide further evidence relating more directly to the purchases for which it sought refunds. A.R. 801. In response, Goodyear produced another affidavit from Bishop, stating that he had spoken to representatives of Goodyear's suppliers and they had confirmed that the products purchased by Goodyear had been produced in facilities which were physically integrated with crude oil refining operations. A.R. 841–43. When OHA contacted these same representatives, they either contradicted, or lent negligible support to, Bishop's assertions. A.R. 844–50, 854–56. On the basis of these contacts, DOE found Bishop's affidavit not to be credible.

As Goodyear did not present any other information supporting its claims, and as the Court finds that DOE weighed the evidence before it is a reasonable manner, the Court will not set aside DOE's order.

Accordingly it is this 17th day of April, 1996,

ORDERED that defendants' motion for summary judgment be and it is hereby GRANTED; and it is further

ORDERED that plaintiff's motion for summary judgment be and it is hereby DENIED.

---

1. The Court also rejects Goodyear's contention that DOE should have found under its decision in *City of Annapolis,* 17 DOE ¶ 85,774 (1988), that Goodyear had been injured by crude oil overcharges. In *City of Annapolis,* DOE suggested that one who purchases an end-user's product may obtain an overcharge refund if it can present a "reasoned argument" that the end-user passed on the crude oil overcharges to its customers. *Id.* at 89,459. While DOE did not expressly define "reasoned argument" in its decision, the Court reads DOE's decision and order as requiring more than the abstract argument presented by Goodyear.